FILED

02 NOV 26 PM 2: 16

CLERK. U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

VERONICA LANE,

        **Plaintiff,**

-vs-                             **Case No.:  6:01-cv-1493-Orl-22KRS**

MRA HOLDINGS, LLC d/b/a MRA VIDEO;
MANTRA FILMS, INC.; AMX PRODUCTIONS,
LLC; VENTURA DISTRIBUTION, INC.; and
WOODHOLLY PRODUCTIONS, INC.

        **Defendants.**

---

## ORDER

### I.    INTRODUCTION

This cause comes before the Court on Defendants, MRA Holding, LLC d/b/a MRA

Video's ("MRA") and Ventura Distribution, Inc.'s ("Ventura"), Motion for Final Summary

Judgment (Doc. No. 48), filed on July 8, 2002, to which the Plaintiff, Veronica Lane

("Lane") responded to (Doc. No. 61) on July 29, 2002; Defendant, Point.360 d/b/a

Woodholly Productions, Inc.'s ("Woodholly"), Dispositive Motion for Final Summary

Judgment (Doc. No. 54), filed on July 17, 2002, to which Lane responded to (Doc. No. 60)

on July 29, 2002; Defendant, Mantra Films, Inc.'s ("Mantra Films"), Dispositive Motion for

Final Summary Judgment (Doc. No. 72), filed on August 12, 2002, to which Lane responded

to (Doc. No. 77) on August 19, 2002; Defendant, AMX Productions, LLC's ("AMX"),

Motion for Partial Summary Judgment as to Count VII of the Amended Complaint (Doc.

No. 90), filed on September 30, 2002, to which Lane responded to (Doc. No. 93) on October

96

2, 2002; and Lane's Motion for Partial Summary Judgment on the Issue of Capacity to

Consent and Supporting Memorandum of Law (Doc No. 62), filed on July 29, 2002, to

which MRA, Ventura, Woodholly, and Mantra responded to (Doc. No. 76) on August 15,

2002. Lane's eight count Amended Complaint alleges unauthorized publication in violation

of Fla. Stat. § 540.08 against MRA (Count I); Mantra (Count IV); Ventura (Count V);

Woodholly (Count VI); and AMX (Count VII), common law invasion of privacy for

commercial misappropriation of likeness against MRA (Count II), false light invasion of

privacy against MRA (Count III), and common law fraud against AMX (Count VIII). Having

reviewed the motions and memoranda, this Court **GRANTS** the Defendants' Motions for

Summary Judgment as to Counts I through VII of the Complaint, and **DENIES** Lane's

Motion for Summary Judgment on the Issue of Capacity to Consent. Accordingly, only the

fraud Count (Count VIII) asserted against Defendant, AMX, remains.

## II. BACKGROUND FACTS

Plaintiff, Veronica Lane, is a resident of Orange County, Florida, and at all times

herein, was under the age of eighteen years.[1] Defendant, MRA, edits and assembles video

footage depicting young women exposing themselves on beaches, along streets, in bars, and

in other public places.[2] Defendant, Ventura, has a distribution agreement with MRA,

allowing Ventura to purchase and sell its videos[3] Defendant, Woodholly, provides MRA

---

[1]*See* Doc. No. 32, ¶¶ 2-3, at 1.

[2]*See* Doc. No. 48, at 2-3.

[3]*See* Doc. No. 32, ¶ 38, at 7; see also Doc. No. 36, ¶38, at 4.

with equipment and personnel to digitize videotapes and to edit digitized images that appear in MRA's videos.[4]  Defendant, Mantra, markets MRA video products, and produces the advertising for MRA's products.[5]  Defendant, AMX films or acquires the film used by MRA in its video products.[6]

On or about September 3rd, 4th, or 5th, of 1999, the Plaintiff, Veronica Lane, operated an automobile in Panama City Beach, Florida.[7]  While Lane operated her automobile, she and a female passenger (Lane's companion) who was sitting in the front passenger seat of Lane's car, were approached by individuals who were in possession of a video camera.[8]  The individuals requested that Lane, along with her companion, expose themselves before the video camera in exchange for beaded necklaces.[9]  Lane and her companion agreed.[10]

Before any of the individuals began removing their clothes, Lane's companion indicated her familiarity with bartering nude video opportunities for beads, by stating that two years ago she had been photographed at Mardi Gras, and that her photograph had been published in *Maxim*, a popular men's magazine that features photographs of women.[11]  Lane's companion then lifted up her shirt, exposing her breasts to the video camera.

---

[4]*See* Doc. No. 54, at 2.

[5]*See* Doc. No. 32, ¶31, at 6; *see also* Doc. No. 68, ¶31, at 4.

[6]*See* Doc No. 32, ¶51, at 9; *see also* Doc. No. 82, ¶51 at 4.

[7]*See* Doc. No. 32, ¶ 10, at 2.

[8]*See id.,* ¶ 11, at 2.

[9]*See id.,* ¶12, at 2.

[10]*See* Doc. No. 48, Ex. A.

[11]*See id.*

Shortly after this interaction, a police officer from off camera stated through a bullhorn: "Close the hatch and get your legs inside." Lane and her companion were initially startled, but quickly resumed their dealings with the cameraman.

Lane then stated "Hi Baby!"[12] She continued, "Hi Baby! I don't need no beads, I got plenty of 'em, well maybe." She then removed her shoulder belt and stated, "I want some . . . I want . . . I want [beads]." Lane subsequently pulled down her tube top to reveal her breasts in return for the beads she requested.

When Lane finished exposing her breasts, the cameraman urged her and her companion to reveal their vaginas, giving him what was referred to as a "bush shot."[13] In response, both Lane and her companion stated that they did not have any "bush," implying that they shaved their vaginas. Nevertheless, Lane and her companion both began to unzip their pants, and Lane's companion exposed a portion of her vagina, after Lane assisted her by removing a belt that was obstructing the cameraman's view.[14] Once Lane's companion finished revealing herself, Lane zipped up her pants without exposing any portion of her vagina, stating "[h]e wants us to go."[15] She then put her car in gear, and drove off.[16]

---

[12]*See id.*

[13]*See id.*

[14]*See id.*

[15]*See id.*

[16]*See id.*

After this incident, the Defendants acquired, edited, assembled, produced, and distributed clips of Lane exposing her breasts in *Girls Gone Wild*,[17] a video that depicts a variety of young women exposing their buttocks and genitals in public places.[18] In addition, Mantra Films marketed *Girls Gone Wild* through paid television commercials containing two and three second censored clips of Lane exposing her breasts.[19] The video that Lane appeared in was marketed with another *Girls Gone Wild* video captioned *Sexy Sorority Sweethearts*.[20] *Sexy Sorority Sweethearts* contains much more explicit sexual material than the *Girls Gone Wild* video in which Lane appeared, including cunnilingus.[21]

The *Girls Gone Wild* commercials and video containing Lane's image surprised Lane because she was under the impression that the cameraman who approached her was intending to make a film for his own personal use.[22] In fact, according to Lane, the cameraman represented to her that he would not show the video to anyone who was not present at that time.[23] Lane further contends that the cameraman did not disclose that he intended to use the film for a commercial purpose, that the film would be transferred or sold to a third party for use in a commercial product, or that her image and likeness would be

---

[17]*See generally* Doc. No. 32.

[18]*See* Doc. No. 48, Ex A.

[19]*See* Doc. No. 48, Ex. B.

[20]*See* Videotape #64

[21] *See id.*

[22]*See* Doc. No. 61, at 2; *see also* Doc. No. 32, ¶ 57, at 10.

[23]*See id; see also* Doc. No. 32, ¶57, at 10.

used in a video containing depictions of women exposing their breast, buttocks, genital areas, and engaging in topless or other erotic dancing in public.[24] According to Lane, she acted in reliance on these representations made to her, and had she known that the video in question was to become part of *Girls Gone Wild,* she would not have acted as she did.[25]

On account of the *Girls Gone Wild* advertisements and video, Lane filed a Complaint against MRA in Florida state court on or about November 1, 2001.[26] Based on diversity of citizenship, MRA removed the lawsuit to the United States District Court for the Middle District of Florida.[27] Following the removal, Lane filed a motion to amend her Complaint to add four additional Defendants involved in the production and distribution of *Girls Gone Wild.*[28] This Court granted that motion on May 16, 2002[29], and on the same day Lane filed an Amended Complaint.[30]

The first three counts of Lane's Amended Complaint state claims against MRA for unauthorized publication in violation of Fla. Stat. § 540.08 (Count I), common law invasion of privacy for commercial misappropriation of likeness (Count II), and false light invasion of privacy (Count III).[31] Counts IV, V, and VI assert claims for unauthorized publication in

---

[24] *See id.*

[25] *See id; see also* Doc. No. 32, ¶60, at 11.

[26] *See generally* Doc. No. 1.

[27] *See id.*

[28] *See generally* Doc. No. 29.

[29] *See generally* Doc. No. 31.

[30] *See generally* Doc. No. 32.

[31] *See generally id.*

violation of Fla. Stat. § 540.08 against Mantra (Count IV), Ventura Distribution (Count V), Woodholly Productions (Count VI), and AMX (Count VII).[32] Count VIII of Lane's Amended Complaint alleges that AMX and/or its agents committed fraud by representing that they were intending to film young ladies for their own personal use and that no one other than those present at the time of the filming would see any videotape made of the Plaintiff.[33]

All five of the Defendants have moved for summary judgment on the claims asserted under Fla. Stat. § 540.08.[34] Likewise, MRA has moved for summary judgment on the claims of common law invasion of privacy for commercial misappropriation of likeness and false light invasion of privacy[35] Finally, Lane has moved for summary judgment on the issue of whether or not she had the capacity to consent to the recording and wide spread distribution of her image.[36] The issue of whether the facts supporting the fraud Count against AMX (Count VIII) present a genuine issue of material fact is currently not before this Court.

### III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

---

[32]*See generally id.*

[33]*See id.,* ¶ 57, at 10.

[34]*See generally* Doc. No. 48; Doc. No. 54; Doc. No. 72; and Doc. No. 90.

[35]*See generally* Doc. No. 48.

[36]*See generally* Doc. No. 62.

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it is one that might affect the

outcome of the case. *See id.* The party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and identifying those materials that

demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,*

477 U.S. 317, 323 (1986). Once the movant satisfies this requirement, the burden shifts to

the non-moving party to "come forward with specific facts showing that there is a genuine

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584

(1986). To meet this burden, the non-moving party "may not rest upon the mere allegations

or denials of the adverse party's pleadings." Fed. R. Civ. P. 56(e). Nor may the non-moving

party rely on a mere scintilla of evidence supporting their position. *See Walker v. Darby,* 911

F. 2d 1573, 1577 (11th Cir. 1990). Rather, for a court to find a genuine issue for trial, the

non-moving party must establish, through the record presented to the court, that it is capable

of providing evidence sufficient for a reasonable jury to return a verdict in its favor. *See*

*Cohen v. United Am. Bank,* 83 F. 3d 1347, 1349 (11th Cir. 1996). When a court considers

whether or not to enter summary judgment, it views all of the evidence, and all inferences

drawn therefrom, in the light most favorable to the non-moving party. *See Hairston v.*

*Gainesville Sun Publ'g Co.,* 9 F. 3d 913, 918 (11th Cir. 1993).

## IV.    LEGAL ANALYSIS

## A. UNAUTHORIZED PUBLICATION OF NAME OR LIKENESS IN VIOLATION OF FLA. STAT. § 540.08

### 1. GENERALLY

In Counts One, Four, Five, Six, and Seven of the Amended Complaint, Lane alleges

claims against MRA, Ventura, Woodholly, Mantra Films, and AMX for violating Fla. Stat. §

540.08. *See generally* Doc. No. 32. Lane asserts these claims based on the Defendants

alleged commercial exploitation of her image in the *Girls Gone Wild* video and its

advertising campaign all without her consent. *See id.*

Fla. Stat. § 540.08 provides in pertinent part:

Unauthorized publication of name or likeness . . . No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by . . . [s]uch person . . .

In the event the consent required . . . is not obtained, the person whose name, portrait, photograph, or other likeness is so used . . . may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages. . .

In their motions for summary judgment, the Defendants argue that they are entitled to

judgment as a matter of law on the  § 540.08 claims because they did not display Lane for

trade, commercial, or advertising purposes, and because Lane consented to the recording and

distribution of her image and likeness. In response, Lane argues that the Defendants used her

person and likeness to directly promote their product, and that the consent she gave did not

extend to the commercial exploitation of her recorded acts. In addition, Lane argues that, as a minor, she was legally incapable of giving consent to the recording and distribution of her image.

## 2. FOR TRADE, COMMERCIAL, OR ADVERTISING PURPOSES

The Defendants first argue that they are not liable under Fla. Stat. § 540.08 because they did not use Lane's image for trade, commercial, or advertising purposes. Under Fla. Stat. § 540.08, the terms "trade", "commercial", or "advertising purpose" mean using a person's name or likeness to directly promote a product or service. *See Valentine v. CBS, Inc.,* 698 F. 2d 430, 433 (11th Cir. 1983) (recognizing that the proper interpretation of Fla. Stat. §540.08 requires the plaintiff to prove that the defendants used a name or likeness to directly promote a product or service); *Tyne v. Time Warnter Entm't Co., L.P.,* 204 F. Supp. 2d 1338 (M.D. Fla. 2002) (recognizing that Fla. Stat. § 540.08 only prohibits the use of a name or image when such use directly promotes a commercial product or service); *Epic Metals Corp. v. CODEC, Inc.,* 867 F. Supp. 1009, 1016 (M.D. Fla. 1994) ("Florida Statute § 540.08 prevents the unauthorized use of a name or personality to directly promote the product or service of the publisher."); *National Football League v. The Alley, Inc.,* 624 F. Supp. 6, 7 (S.D. Fla. 1983) ("Section 540.08 of the Florida Statutes prohibit unconsented use of an individual's name and likeness only when such directly promotes a commercial product or service"); *Loft v. Fuller,* 408 So. 2d 619, 622 (Fla. 4th DCA 1981) ("In our view, Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial, or

advertising purposes, is designed to prevent the unauthorized use of a name to directly

promote the product or service of the publisher").

As a matter of law, this Court finds that Lane's image and likeness were not used to

directly promote a product or service. In coming to this conclusion, this Court relies upon

Section 47 of the Restatement (Third) of Unfair Competition which defines "the purposes of

trade" as follows:

> The names, likeness, and other indicia of a person's identity are used "for the
> purposes of trade" . . . if they are used in advertising the user's goods or services, or
> are placed on merchandise marketed by the user, or are used in connection with
> services rendered by the user. However, use "for the purpose of trade" does not
> ordinarily include the use of a person's identity in news reporting, commentary,
> entertainment, works of fiction or nonfiction, or in advertising incidental to such
> uses.

Therefore, under this definition, the "use of another's identity in a novel, play, or

motion picture is . . .not ordinarily an infringement . . . [unless] the name or likeness is used

solely to attract attention to a work that is not related to the identified person. . . " *Id.* at

comment c.

In this case, it is irrefutable that the *Girls Gone Wild* video is an expressive work

created solely for entertainment purposes. Similarly, it is also irrefutable that while Lane's

image and likeness were used to sell copies of *Girls Gone Wild,* her image and likeness were

never associated with a product or service unrelated to that work. Indeed, in both the video

and its commercial advertisements, Lane is never shown endorsing or promoting a product,

but rather, as part of an expressive work in which she voluntarily participated. Consequently,

in accordance with Section 47 of the Restatement, the use of Lane's image or likeness in
*Girls Gone Wild*, and in the marketing of that video cannot give rise to liability.

Several courts applying Fla. Stat. §540.08 have come to similar conclusions. For
instance, in *Tyne v. Time Warner Entm't Co., LP*, 204 F. Supp. 2d 1338 (M.D. Fla. 2002),
this Court held that the use of the names and likenesses of individuals in a motion picture
and the promotion and advertisement of such picture did not violate §540.08 because there
was no showing that their names and likenesses were used to directly promote a service or
product. *See id.* at 1343.

In *Tyne*, the plaintiffs, the surviving children and spouse of Frank William Tyne, Jr.,
a captain of a commercial fishing vessel that was lost at sea, brought suit against Time
Warner under §540.08, after his story became the motion picture, *The Perfect Storm. See id.*
at 1339.

In granting summary judgment, this Court held that the use of the plaintiffs' names or
likenesses in *The Perfect Storm* was not actionable under §540.08 because "[a] motion
picture is not . . . in and of itself, a 'commercial purpose.'" *Id.* at 1341. Furthermore, the
Court held that "the promotion and advertising of the picture also [did] not constitute a
commercial purpose." *Id.*

Likewise, in *Loft v. Fuller*, 408 So. 2d 619 (Fla. 4th DCA 1981), Florida's Fourth
District Court of Appeal denied a claim for the unauthorized publication of name or likeness
arising out of a depiction in an expressive work of art because "Section 540.08 . . . is

-12-

designed [only] to prevent the unauthorized use of a name to directly promote the product or service of the publisher." *Id.* at 622.

In that case, decedent, Robert Loft was a commercial pilot who died in the crash of Eastern Airlines Flight 401. *Id.* at 620. In the weeks and months following the crash, there were reported sightings of apparitions of Flight 401 crew members, including Loft. *See id.* These reports were extensively covered by the news media, and as a result, in 1976, John Fuller wrote a non-fiction book about the crash, *The Ghost of Flight 401*, which was later made into a motion picture. *See id.*

After *The Ghost of Flight 401* was made into a motion picture, Loft's family filed an action for unauthorized publication of Loft's name and likeness based on the picture's depiction of Loft as a "reappearing ghost."*Id.* In dismissing this count, the trial court found "that the use of the decedent's name in the publication of *The Ghost of Flight 401*, and the use of his name in the subsequent movie did not constitute commercial trade or advertising." *Id.* at 621. On appeal, the Fourth District Court of Appeal, affirmed, holding:

> In our view, Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher. Thus, the publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else. Such is not the case here. While we agree that at least one of the purposes of the author and publisher in releasing the publication in question was to make money through sales of copies of the book and that such a publication is commercial in that sense, this in no way distinguished this book from almost all other books, magazines or newspapers and simply does not amount to the kind of commercial exploitation prohibited by the statute.

*Id.* at 622-23.

Upon reviewing Florida case law, it has come to this Court's attention that only one case has applied the provisions of Fla. Stat. §540.08 to an expressive work . In *Gritzke v. M.R.A. Holding, LLC,* No. 4:01cv495-RH (N.D. Fla. Mar. 15, 2002), Judge Hinkle of the Northern District of Florida determined that the plaintiff stated a valid claim under §540.08 by alleging that her half naked image was plastered on the front cover of the videotape *Girls Gone Wild* without her authorization. *See id.* at 4 ("Plaintiff has squarely alleged that defendant published her photograph in Florida for commercial and advertising purposes - specifically on the package of defendant's videotape and in advertisements therefor - and that defendant did so without her permission. This states a claim under §540.08"). In that case, however, the court was working under the more liberal standard governing motions to dismiss, where a motion is granted only if it appears to a certainty that the plaintiff would be unable to recover under any set of facts that could be proved in support of the complaint. *See id.* at 2. In addition, the plaintiff in *Gritzke* was complaining about the use of her image on the outside cover of a videotape package. *See generally id.* In this case, Lane has not alleged that her image was plastered on a billboard or box cover advertising *Girls Gone Wild.* Rather, this cause of action arises from the Defendants truthful and accurate depiction of Lane voluntarily exposing her breasts to a camera, just as she did on Labor Day Weekend in Panama City Beach, Florida. Unlike in *Gritzke,* the Plaintiff's image in this case was never doctored. It has always remained in its original video format. Accordingly, the *Gritzke* case offers Lane little assistance.

Notwithstanding the Plaintiff's citation to *Gritzke,* this Court finds that Lane's action is more analogous to those brought in *Tyne* and *Loft.* Like *Tyne* and *Loft,* Lane's lawsuit arose from an expressive work that has no purpose other than to entertain a segment of the

general population. Moreover, as in *Tyne* and *Loft,* the Plaintiff in this case is not shown

endorsing or promoting a product, but rather as participating in an expressive work.

Accordingly, as in *Tyne* and *Loft,* this Court finds that the publication of *Girls Gone Wild* is

not actionable simply because it is sold for a profit.

Because Lane has failed to establish that the Defendants used her image or likeness

to directly promote a product or service unrelated to the participation in the expressive work

*Girls Gone Wild*, summary judgment must be granted with respect to all of the claims

brought pursuant to §540.08.

**3. CONSENT**

In addition to the lack of a trade, commercial, or advertising purpose, this Court finds

that summary judgment is appropriate because Lane consented to the use of her image and

likeness.

Section 540.08 of the Florida Statutes provides that in order to be liable for

commercial misappropriation, there must be an unauthorized publication. Lane argues that,

as a minor, she was legally incapable of authorizing and consenting to the Defendants'

publication of her image and likeness. *See generally* Doc. No. 62. In addition, Lane argues

that even if she were legally able to give consent to the video recording of her image, there is

a genuine issue of material fact as to whether or not her consent extended to the Defendants'

wide-spread publication of her image.

a. Lane's Capacity to Consent

In support of her argument of lack of capacity to consent, Lane cites to Fla. Stat. §743.07,[37] which removes the disabilities of a minor at the age of 18, and Fla. Stat. § 743.015[38], which sets forth a specific procedure for removing the disabilities of a minor prior to obtaining the age of the majority. Lane also cites to various other statutes and doctrines of common law, which remove the disability of nonage in specific instances such as borrowing money for educational expenses[39], blood donation[40], and contracting for necessities, including food, shelter, and in some cases automobiles.[41] *See id.* at 2-3. Lane contends that because she was 17 years of age at the pertinent time, never having the disability of nonage removed, she couldn't possibly have consented to the use of her image or likeness in *Girls Gone Wild*, especially since consenting to the publication of an image or likeness does not

---

[37]Fla. Stat. § 743.07 provides "[t]he disability of nonage is hereby removed for all persons in this state who are 18 years of age or older, and they shall enjoy and suffer the rights, privileges, and obligations of all persons 21 years of age or older except as otherwise excluded by the State Constitution immediately preceding the effective date of this section and except as otherwise provided in the Beverage Law."

[38]Fla. Stat. §743.015 provides "[a] circuit court has jurisdiction to remove the disabilities of nonage of a minor age 16 or older residing in this state upon a petition filed by the minor's natural or legal guardian or, if there is none, by a guardian ad litem . . . If the court determines that removal of the disabilities of nonage is in the minor's best interest, it shall enter an order to that effect. An order removing the disabilities of nonage shall have the effect of giving the minor the status of an adult for purposes of all criminal and civil laws of the state, and shall authorize the minor thereafter to exercise all of the rights and responsibilities of persons who are 18 years of age or older."

[39]*See* Fla. Stat. § 743.05.

[40]*See* Fla. Stat. § 743.06.

[41]*See Rose v. Sheehan Buick, Inc.*, 204 So. 2d 903 (Fla. 3rd DCA 1967) (holding that a minor who used an automobile to carry on his school business and social activities could be required to pay for the use of the vehicle under the doctrine of necessities); *But see Hartman Auto Sales, Inc. v. Jaye*, 214 So. 2d 97 (Fla 1st DCA 1968) (allowing recision of contract to purchase automobile where dealer did not demonstrate that automobile was a necessity).

fall within the purview of any statute or common law doctrine removing the disability of

nonage[42]. *See id.*

After conducting a comprehensive review of Florida law, this Court has discovered a

plethora of law regarding the disability of nonage and its application to a minor's legal

capacity to engage in and consent to certain activities. Specifically, Florida law requires that

an individual be eighteen to serve on a jury[43], eighteen to vote[44], eighteen to get a body

piercing without the express written consent of a parent[45], eighteen to get a marriage

license[46], sixteen to operate a BB gun without direct adult supervision[47], eighteen to purchase

---

[42]Lane argues that another reason why this Court should find that she was incapable of consenting to the publication of her image is because of the Florida legislatures' repeated indications that sexually exploiting minors is contrary to the public policy of this state. *See* Doc. No. 61. With regards to this argument, there is one Florida statute exactly on point. Section 827.071 of the Florida statutes punishes individuals who induce or employ children less than 18 years of age to engage in a "sexual performance." A "sexual performance" means "any performance or part thereof which includes sexual conduct by a child less than 18 years of age." Sexual conduct means "actual or simulated sexual intercourse, sexual bestiality, masturbation, or sadomasochistic abuse; actual lewd exhibition of the genitals; actual physical contact with a person's clothed or unclothed genitals, public areas, buttocks, or, if such person is a female, breast with the intent to arose or gratify the sexual desire of either party; or any act or conduct which constitutes sexual battery or stimulates that sexual battery is being or will be committed." The exposure of Lane's breast did not constitute sexual conduct as that term is defined by this statute. *See State v. Pasko,* 2002 Fla. App. Lexis 4288 (Fla. 2nd DCA Apr. 3, 2002) ("nudity alone does not constitute sexual conduct"). Accordingly, the publication of Lane's image and likeness in *Girls Gone Wild* falls outside of the protections afforded to minors in §827.071. Thus, a finding that Lane could consent to the publication of her image and likeness in *Girls Gone Wild* does not contravene Florida's public policy against the sexual exploitation of children.

[43]*See* Fla. Stat. §40.01.

[44]*See* Fla. Stat. §97.041.

[45]*See* Fla. Stat. §381.0075.

[46]*See* Fla. Stat. § 741.04.

[47]*See* Fla. Stat. § 790.22 ("The use for any purpose whatsoever of BB guns, air or gas-operated guns, or electric weapons or devices, by any minor under the age of 16 years is prohibited unless such use is under the supervision and in the presence of an adult who is acting with the consent of the minor's parent).

a lottery ticket[48], eighteen to play a bingo game[49], eighteen to participate in penny-ante

gambling[50], eighteen to attend a pari-mutuel even without parental accompaniment[51], sixteen

to attend pugilistic events without parental accompaniment[52], sixteen to operate a bicycle

without a helmet[53], eighteen to purchase harmful chemical substances[54], sixteen to operate an

automobile[55], eighteen to use a tanning bed without the express written consent of a parent[56],

eighteen to consent to medical treatment[57], twenty-one to drink alcoholic beverages[58],

eighteen to possess tobacco products[59], eighteen to make a will[60], eighteen to act as a

---

[48] *See* Fla. Stat. § 24.1055.

[49]*See* Fla. Stat. §849.0931.

[50]*See* Fla. Stat. §849.085.

[51] *See* Fla. Stat. §550.0425.

[52] *See* Fla. Stat. §548.069.

[53]*See* Fla. Stat. §316.2065

[54]*See* Fla. Stat. §499.039.

[55]*See* Fla. Stat. §322.05.

[56]*See* Fla. Stat. §381.89 ("A tanning facility may not allow a minor between the ages of 14 and 18 to use a tanning device unless it has on file a statement signed by the minor's parent or legal guardian stating that the parent or legal guardian has read and understands the warnings given by the tanning facility, consents to the minor's use of a tanning device, and agrees that the minor will use the provided protective eyewear").

[57]*See* Fla. Stat. §743.064 (delineating framework for giving emergency medical care or treatment to minors without parental consent); *See also* Fla. Stat. §743.0645 (listing persons who may consent to the medical care or treatment of a minor).

[58]*See* Fla. Stat. §562.11.

[59]*See* Fla. Stat. § 569.101.

[60]*See* Fla. Stat. § 732.501 ("Any person who is of sound mind and who is either 18 or more years of age or an emancipated minor may make a will")

personal representative[61], eighteen to engage in transactions with a pawn broker[62], eighteen

to purchase a weapon without the permission of a parent[63], eighteen to view motion pictures,

exhibitions, shows, or presentations depicting nudity or sexual conduct[64], eighteen to

purchase pornography,[65] sixteen or seventeen to consent to sexual activity with a person

under the age of twenty-four,[66] and eighteen to enter a contract for compensation under

which a minor will endorse a product or service.[67]

Interestingly, none of the aforementioned statutes discusses the disability of nonage

in relation to a minor's legal capacity to consent to the publication of her likeness where no

contract for compensation is involved. Thus, while Lane is correct in her assertion that the

use of a minor's image and likeness does not fall within the purview of any statute or

---

[61]*See* Fla. Stat. §733.303(1)(c).

[62]*See* Fla. Stat. §539.001.

[63]*See* Fla. Stat. §790.17 ("A person who sells . . . or gives any minor under 18 years of age any dirk, electric weapon or device, or other weapon, other than an ordinary pocketknife, without permission of the minor's parents or guardian . . . . commits a misdemeanor of the first degree").

[64]*See* Fla. Stat. §847.013(2)(a) ("It is unlawful for any person knowingly to exhibit for a monetary consideration to a minor or knowingly to sell or rent a videotape of a motion picture to a minor or knowingly sell to a minor an admission ticket or pass or knowingly admit a minor for a monetary consideration to premises whereon there is exhibit a motion picture, exhibition, show, representation, or other presentation which, in whole or in part, depicts nudity, sexual conduct, sexual excitement, sexual battery, bestiality, or sadomasochistic abuse and which is harmful to minors").

[65]*See* Fla. Stat. §847.012 ("It is unlawful for any person knowingly to sell, rent, or loan for monetary consideration to a minor . . . [a]ny picture, photograph, drawing, sculpture, motion picture film, videocassette, or similar visual representation or image of a person or portion of the human body which depicts nudity or sexual conduct, sexual excitement, sexual battery, bestiality, or sadomasochistic abuse and which is harmful to minors").

[66]*See* Fla. Stat. §794.05 (1) ("A person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree...").

[67]*See* Fla. Stat. §540.08.

common law doctrine removing the disability of nonage, it is apparent to this Court that the

reason for this is because the disability of nonage does not exist under such circumstances.

Indeed, if the Florida legislature had wanted to protect minors from consenting to the

uncompensated use of their image and likeness, they would have specifically provided for

the disability of nonage, just as they did in all of the previously mentioned statutes. The only

reason for removing the disability of nonage for the purposes of borrowing money for

educational expenses, donating blood, and purchasing necessities is because it is well

established that the disability of nonage exists under such circumstances. Florida law has

long recognized that a minor is incapable of consenting to medical treatment[68] and

contracting for goods and services.[69] To the contrary, however, Florida law has never

recognized that a minor is incapable of consenting to the publication of her image and

likeness where no compensation is involved.

This interpretation of § 540.08 is corroborated by Fla. Stat. § 743.08(1)(b) which

provides, in pertinent part:

---

[68]*See* Fla. Stat. §743.064 (delineating framework for giving emergency medical care or treatment to minors without parental consent); *See also* Fla. Stat. §743.0645 (listing persons who may consent to the medical care or treatment of a minor).

[69]*See Putnam v. Walker*, 55 So. 844, 845 (Fla. 1911) ("The right of an infant to avoid his contract is one conferred by law for his protection against his own improvidence and the designs of others; and though its exercise is not infrequently the occasion of injury to others who have in good faith dealt with him, this is a consequence which they might have avoided by declining to enter into the contract. It is the policy of the law to discourage adults from contracting with infants, and the former cannot complaint if, as a consequence of their violation of this rule of conduct, they are injured by the exercise of the right with which the law purposely invested the latter, nor charge that the infant, in exercising the right, is guilty of fraud" ).

A contract made by a minor or made by a parent or guardian of a minor, or a contract proposed to be so made, may be approved by the probate division of the circuit court or any other division of the circuit court that has guardianship jurisdiction, where the minor is a resident of this state, or the services of the minor are to be performed or rendered in this state, where the contract sought to be approved is one under which . . the minor will . . . endorse a product or service, or in any other way receive compensation for the use of right of publicity of the minor as that right is defined by §540.08.

From the plain language of this statute, it is apparent that §540.08 incorporates the disability of nonage only with regards to publication of likeness for compensation, and not with respect to the ability of a minor to consent generally to the publication of his or her likeness. Otherwise, the Florida legislature would have included a provision for approving the publication of a minor's image and likeness in general, and not just where compensation was involved. This construction follows the "general principle of statutory construction, well-established in Florida's jurisprudence, that the mention of one thing implies the exclusion of another, *expressio unius est exclusio alterius* . . . Therefore, where a statute enumerates the things on which it is to operate, the statute will ordinarily be construed as excluding from its operation all those things not expressly mentioned." *Desisto College, Inc. v. Town of Howey-in the Hills,* 706 F. Supp. 1479, 1495 (M.D. Fla. 1989) (citing *Towerhouse Condominium, Inc. v. Millman,* 475 So. 2d 674, 676 (Fla. 1985); *Thayer v. State,* 335 So. 2d 815, 817 (Fla. 1976); *Ideal Farms Drainage Dist. v. Certain Lands,* 19 So. 2d 234, 239 (Fla. 1944)). Since the Florida legislature only addressed the disability of nonage with regards to contracting the right of publicity as defined under § 540.08, this Court must presume, under the maxim *expressio unius est exclusio alterius,* that the

-21-

legislature did not need to address the application of the disability of nonage with respect to

the  broader issue of consent under §540.08.

This Court also notes that if the legislature of Florida wanted to qualify the word

consent with the disability of nonage, they could have easily done so, just as other

legislatures have done in similar unauthorized publication statutes. *See, e.g.,* Cal. Civ. Code

§3344 ("Any person who knowingly uses another's name, voice, signature, photograph, or

likeness, in any manner, on or in products, merchandise, or goods, or for purposes of

advertising or selling, or soliciting purchases of, products, merchandise, or goods, or for

purposes of without such person's prior consent, or, in the case of a minor, the prior consent

of his or legal guardian, shall be liable for any damages sustained by the person or persons

injured as a result thereof"); *see also* NY CLS Civ. R § 50 ("A person, firm, or corporation

that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture

of any living person without having first obtained the written consent of such person, or if a

minor of his or her parent or guardian, is guilty of a misdemeanor").

Based on the foregoing, this Court finds that despite the fact that Lane was only

seventeen at the pertinent time, she could consent to the filming and distribution of her

image and likeness.

b. The Extent of Lane's Consent

Lane next argues that even if she were legally able to give consent to the video

recording of her image, there is a genuine issue of material fact as to whether or not her

consent extended to the Defendants' wide-spread publication of her image. *See* Doc. No. 61, at 11.

In making this argument, Lane calls attention to her allegation that the cameraman who captured her image represented that he was intending to film young ladies for his own personal use "and that no one other than those present at the time of the filming would see any videotape made of the Plaintiff." Doc. No. 32, at 10.

After viewing the *Girls Gone Wild* video, this Court finds that even if the cameraman made such representations, no reasonable jury could conclude that Lane's consent limited the viewing of her image and likeness  to only those persons present at the time of the filming.

This Court rests its decisions on a variety of factors. Foremost, is the fact that the interactions between Lane and the cameraman were not private in nature. Lane exposed herself on a public street while several pedestrians were in the general vicinity. Second, Lane did not know the cameraman before whom she exposed herself. It is unreasonable to expect that a total stranger would limit the viewing of a video with shots of young women publicly exposing themselves to only those persons present at the time of the filming.

Finally, and perhaps most damaging to Lane's argument, is the fact that before any clothes were removed, Lane's companion stated that two years ago she had been photographed at Mardi Gras, and that her photograph had been published in *Maxim*.  This statement should have raised Lane's eyebrows, and if she were concerned about the extent of the publication of her image, she should have restricted the use of the video tapes before

exposing her breasts. There is nothing in the record indicating that Lane placed any

restriction on the use of the video tape. Instead, after her friend made such statement, Lane

pulled down her tube top for the camera without any hesitation.

### B. COMMON LAW INVASION OF PRIVACY - COMMERCIAL MISAPPROPRIATION OF LIKENESS

In Count II of the Amended Complaint, Lane asserts a claim against MRA for

common law invasion of privacy - commercial misappropriation of her likeness.[70] *See* Doc.

No. 32 at 4-5. *See id.* Under Florida law, the elements of common law invasion of privacy -

commercial misappropriation of likeness coincide with the elements of unauthorized

publication of name or likeness in violation of Fla. Stat. § 540.08. *See Heath v. Playboy*

*Enters., Inc.*, 732 F. Supp. 1145, 1147-48 (S.D. Fla. 1990) (noting that fourth theory of

recovery under common law invasion of privacy, "appropriation for commercial benefit, is

statutory in Florida"); *Loft v. Fuller*, 408 So. 2d 619, 622 (4th DCA 1981) ("By enacting

section 540.08, the Florida Legislature has amplified the remedies available for the fourth

form of invasion of privacy: commercial exploitation of the property value of a person's

name or personality"). Accordingly, for the same reasons as set forth in Part IV. B. above,

MRA's motion for summary judgment as to Count II of the Amended Complaint is granted.

---

[70]The Defendants argue that Fla. Stat. §540.08 absorbed the common law claim of invasion of privacy based upon a commercial misappropriation of likeness. However, section 6 of Fla. Stat. § 540.08 provides that the "remedies provided for in this section shall be in addition to, and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy." *See also Loft v. Fuller*, 408 So. 2d 619, 622 (4th DCA 1981) ("By enacting section 540.08, the Florida Legislature has amplified the remedies available for the fourth form of invasion of privacy: commercial exploitation of the property value of a person's name or personality"). Accordingly, this Court finds that Florida continues to recognize the common law tort of invasion of privacy - commercial misappropriation of likeness.

## C. FALSE LIGHT INVASION OF PRIVACY

In Count III of the Amended Complaint, Lane asserts a claim against MRA for false light invasion of privacy.[71] *See* Doc. No. 32 at 5-6. According to Lane, MRA's juxtaposition of her with other items shown on the same video (e.g. women exposing their genital areas, or engaging in extended topless and suggestive dancing) portrayed her in a false light. *See* Doc. No. 61, at 15. Lane additionally contends that MRA's marketing of *Girls Gone Wild* with *Sexy Sorority Sweethearts*, a video that contains even more extensive and offensive sexually explicit scenes including cunnilingus, exacerbated this false light. *See id.* at 15-16.

The two essential elements for recovery under false light invasion of privacy are: (1) the false light must be highly offensive to a reasonable person; and (2) the defendant must

---

[71]Although MRA argues that Florida law should not recognize the tort of false light invasion of privacy because its value does not outweigh its chilling effect on speech, the overwhelming weight of authority applying Florida law has recognized such a cause of action exists. *See Trujillo v. Banco Cent. Del Ecuador,* 17 F. Supp. 2d 1334, 1340 n.5 (S.D. Fla. 1998) ("Plaintiffs argue, correctly that Florida recognizes false light invasion of privacy claims"); *Harris v. Dist. Bd. of Trs. of Polk Cmty. College,* 9 F. Supp. 2d 1319, 1329 (M.D. Fla. 1998) (delineating elements of false light invasion of privacy tort under Florida law); *Epic Metals Corp. v. Condec, Inc.,* 867 F. Supp. 1009, 1017 (M.D. Fla. 1994) (finding that under Florida common law, the tort of invasion of privacy includes portraying an individual in a false light in the public eye); *Heath v. Playboy Enter., Inc.,* 732 F. Supp. 1145, 1147-48 (S.D. Fla. 1990) (finding that Florida recognizes tort for false light invasion of privacy); *Agency for Heath Care Admin. v. Associated Indus. of Florida, Inc.,* 678 So. 2d 1239, 1252 n.20 (Fla. 1996) (recognizing that one of the four types of wrongful conduct that can be remedied with resort to an invasion of privacy action is false light in the public eye); *Fla. Publishing Co. v. Fletcher,* 340 So. 2d 914, 918 (Fla. 1976) (recognizing that for recovery under the false light doctrine, there must be some contention that the information complained of is either false or inaccurate); *Heekin v. CBS,* 789 So. 2d 355, 358 (Fla. 2nd DCA 2001) (recognizing tort of false light invasion of privacy); *Armstrong v. H&C Communications, Inc.,* 575 So. 2d 280, 283 (5th DCA 1991) (recognizing tort of false light invasion of privacy); *Williams v. Minneola,* 575 So. 2d 683, 689 n.5 (5th DCA 1991) (recognizing tort of false light invasion of privacy); *Loft v. Fuller,* 408 So. 2d 619, 621 (Fla. 4th DCA 1981) (finding that Florida decisional law recognizes a cause of action for false light invasion of privacy); *Cape Publications, Inc. v. Bridges,* 387 So. 2d 436, 440 n.6 (Fla 5th DCA 1980) (recognizing tort of false light invasion of privacy). Therefore, this Court will recognize Lane's cause of action for false light invasion of privacy.

have acted either knowingly or in reckless disregard as to the falsity of the publicized material and the false light in which it would be placed. *See Harris v. Dist. Bd. of Trs. of Polk Cmty. College,* 9 F. Supp. 2d 1319, 1329 (M.D. Fla. 1998); *See also* Section 652(e) of the *Restatement (Second) of Torts.*

With regards to the first element, although a reasonable jury could conclude that the use of Lane's image and likeness in a video containing women exposing themselves is highly offensive, no reasonable jury could conclude that *Girls Gone Wild* or its marketing campaign with *Sexy Sorority Sweethearts* placed Lane in a false light.

Foremost, in the video, Lane is depicted truthfully and accurately as doing exactly what she did, exposing her breasts on a street in Panama City in exchange for a beaded necklace. Moreover, considering the nature of Lane's actions, the publication of her image in a video containing other women engaging in similar acts was neither unreasonable nor inaccurate. As MRA points out, this is not a case where Lane was videotaped at a private pool removing her clothing, only to have her image later interspliced with videotapes of other women removing their clothing in public, giving the false impression that Lane engaged in such debauchery. Rather, *Girls Gone Wild* video depicts Lane accurately as exchanging nude photographs for beads on a street in Panama City, just as dozens of other women in the video are doing. Altogether, MRA's juxtaposition of Lane with other women exposing themselves cannot give rise to the tort of false light invasion of privacy because the depiction of Lane was reasonable, accurate, and truthful. *See Easter Seal Soc. for Crippled Children & Adults v. Playboy Enters., Inc.,* 530 So. 2d 643, 647 (La. App. 1988) ( "[t]he

-26-

tort of false light invasion of privacy affronts that private self by publishing a public display in a manner which is both unreasonable and false"). "If the publicity is an accurate portrayal of the public display, if the publicity is not unreasonable and false, then plaintiff has no actionable privacy interest, even if the publicity has caused embarrassment, offense, or damage." *Id.* (holding that the use of a clip from a Mardi Gras parade in a Playboy movie focusing on sex and drugs could not support a false light claim because although the publicity could have caused embarrassment, offense, or damage, "if the publicity is not unreasonable and false, then plaintiff has no actionable privacy interest").

This Court also notes that MRA's marketing of *Girls Gone Wild* with *Sexy Sorority Sweethearts* does not lend assistance to Lane's argument. Foremost, *Sexy Sorority Sweetheart* is an entirely separate publication. In addition, although *Sexy Sorority Sweethearts* contains even more extensive and offensive sexually explicit scenes than *Girls Gone Wild,* Lane's image in *Girls Gone Wild* is limited exclusively to the already described scene where she voluntarily exposes her breasts, and zips down her pants with the thought of providing the camera with a "bush shot." There is no suggestion, implication, or innuendo connecting Lane with the more offensive and sexually explicit scenes of *Sexy Sorority Sweethearts.* Consequently, MRA is entitled to summary judgment on Count III. *See Fla. Publ'g Co. v. Fletcher,* 340 So. 2d 914, 918 (Fla. 1976) (recognizing that recovery under the false light doctrine of invasion of privacy is not available where there is nothing false or inaccurate about a defendant's portrayal); *Heekin v. CBS Broad., Inc.,* 789 So. 2d 355, 359 (Fla. 2nd DCA 2001) (holding that because "a false light invasion of privacy action can be

based on truthful information, the question is whether the defendant acted with knowledge

of the false light in which the plaintiff would be cast or in reckless disregard of such false

light"); *Cape Publications, Inc. v. Bridges*, 387 So. 2d 436, 440 (Fla. 5th DCA 1980) ("if the

action for invasion of privacy arises out of publication of matter which places a claimant in a

'false light,' it is necessary that there be proof that publication was made with knowledge of

its falsity or in reckless disregard of the truth").

## V. CONCLUSION

Based on the foregoing, it is ordered as follows:

1.      Defendants,  MRA Holding, LLC d/b/a MRA Video's and Ventura

Distribution, Inc.'s, Motion for Final Summary Judgment (Doc No. 47), filed on July 8,

2002 is **GRANTED.**

2.      Defendant, Point.360 d/b/a Woodholy Productions, Inc.'s, Dispositive

Motion for Final Summary Judgment (Doc. No. 54), filed on July 17, 2002 is **GRANTED.**

3.      Defendant, Mantra Films, Inc.'s, Dispositive Motion for Final Summary

Judgment (Doc. No. 72), filed on August 12, 2002 is **GRANTED.**

4.      Defendant, AMX Productions, LLC's, Motion for Partial Summary Judgment

as to Count VII of the Amended Complaint (Doc. No. 90), filed on September 30, 2002 is

**GRANTED.**

5.      Plaintiff, Veronica Lane's, Motion for Partial Summary Judgment on the

Issue of Capacity to Consent and Supporting Memorandum of Law (Doc No. 62), filed on

July 29, 2002 is **DENIED.**

6.     Final judgment will be entered on these claims at the conclusion of this case.

7.     The Clerk shall terminate MRA Holding, LLC d/b/a MRA Video, Ventura Distribution, Inc., Point.360 d/b/a Woodholly Productions, Inc., and Mantra Films Inc., as parties in this matter.

8.     Only the fraud Count (Count VIII) asserted against Defendant, AMX Productions, LLC, remains in this case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida this _26th_ day of November, 2002.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Administrative Law Clerk
Unrepresented Parties

F I L E   C O P Y

Date Printed: 11/26/2002


Notice sent to:

_____   Joseph Daniel Tessitore, Esq.
        Motes & Carr, P.A.
        P.O. Box 3426
        Orlando, FL  32802-3426

_____   Thomas R. Julin, Esq.
        Hunton & Williams
        Barclays Financial Center
        1111 Brickell Ave., Suite 2500
        Miami, FL  33131

_____   D. Patricia Wallace, Esq.
        Hunton & Williams
        Barclays Financial Center
        1111 Brickell Ave., Suite 2500
        Miami, FL  33131

_____   David Charles Willis, Esq.
        Mateer & Harbert, P.A.
        225 E. Robinson St., Suite 600
        P.O. Box 2854
        Orlando, FL  32802-2854

_____   David Leonard Evans, Esq.
        Mateer & Harbert, P.A.
        225 E. Robinson St., Suite 600
        P.O. Box 2854
        Orlando, FL  32802-2854